MARTIN HOWARD CONDRY ET AL. *v.* CHARLES
C. LAURIE ET UX.

[No. 77, October Term, 1944.]

*Decided January 30, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN and HENDERSON, JJ.

*Thomas Lohr Richards,* with whom was *H. G. Shores* on the brief, for the appellants.

*William A. Gunter* submitted on brief for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

Charles C. Laurie and wife allege in their bill of complaint for injunction: (1) that they own a parcel of land near the county road in Eckhart, Allegany County; (2) that Martin Howard Condry, defendant, owns an adjoining parcel, and that his brother-in-law, Joseph La Porta, defendant, is one of the occupants of that property; (3) that complainants' only means of access to the county road is over a private road on Condry's property, which complainants and their predecessors in title have used continuously for many years as a means of ingress and egress, thereby acquiring a right of way by prescription; and (4) that in October, 1943, La Porta, acting for Condry, erected a barricade across the road, preventing complainants from entering their property.

The tract of land, comprising the two parcels, was originally divided into three lots on a plat made for Clayton Purnell, trustee, in 1918. This plat shows lot 1 binding on the county road, and lots 2 and 3 as inner lots, with a 15-foot road running through lots 1 and 2 to lot 3. In September, 1918, the trustee conveyed the entire tract to William H. Rephorn, who conveyed it to Justus Rephorn in October, 1918.

The inner parcel (lot 3 and all of lot 2 except a 15-foot strip adjacent to lot 1) was acquired by complainants in 1941. It appears that Justus Rephorn and wife conveyed this parcel on March 24, 1920, to William Hittle and wife, who were given in the deed a "license to use the private road from the County Road to and from the property now conveyed * * * while they shall remain owners of the property." On December 24, 1940, Hittle and wife conveyed the property to Alice Mae Stevens. In 1941 Mrs. Stevens and husband conveyed it to complainants.

The outer parcel (lot 1 and the remaining 15-foot strip of lot 2) was conveyed by Justus Rephorn and wife to Condry on May 11, 1920.

In October, 1943, complainants took down a part of the O'Brien fence along the road in order to be able to haul dirt by motor truck from the O'Brien property. Defendants claimed that, by doing so, complainants abused their permission to use the road and made it a public thoroughfare. For that reason, defendants said, they placed the barricade across the road.

It is an established principle that when an owner of land lays it off in lots and sells them as binding on certain streets, which are sufficiently designated, such a designation raises an implied covenant that a public way exists; and unless the grantor uses language to show that he did not intend a dedication to public use, the presumption of dedication becomes conclusive. *Harlan v. Town of Bel Air,* 178 Md. 260, 13 A. 2d. 370. But in this case it is admitted that the road in dispute is a private road. When complainants acquired their property in 1941, the land records gave notice to the world that the Hittles obtained merely a license to use the road as long as they were owners of the property. It is axiomatic that the recordation of a conveyance operates as constructive notice upon all subsequent purchasers of any legal or equitable estate in the property conveyed. *Cooke's Lessee v. Kell,* 13 Md. 469, 493. The distinction between an easement and a mere license to use land is clear. While an easement implies an interest in land, a license is merely a personal privilege to do some particular act or series of acts on land without possessing any estate or interest therein. *Shipley v. Fink,* 102 Md. 219, 226, 62 A. 360; *McClintic-Marshall Co. v. Ford Motor Co.,* 254 Mich, 305, 236 N. W. 792, 77 A. L. R. 807, 812. In *De Haro v. United States,* 5 Wall. 599, 627, 18 L. Ed. 681, 688, Justice Davis spoke of the incidents of a license as follows: "It is an authority to do a lawful act, which, without it, would be unlawful, and while it remains unrevoked is a justification for the acts which it authorizes to be done. It ceases with the death of either party, and cannot be transferred or alienated by the licensee, because it is a personal matter, and is limited to the original parties to it."

In order to establish an easement by prescription, it is necessary to prove an adverse, exclusive and uninterrupted use of the way for twenty years. Adverse use means use without license or permission. Where a person has used a right of way for twenty years unexplained, it is fair to presume that the use has been under a claim of right, unless it appears to have been by permission. *Cox v. Forrest,* 60 Md. 74, 79; *Smith v. Shiebeck,* 180 Md. 412, 24 A. 2d 795. The record in this case indicates that the Hittles used the private road for more than twenty years in pursuance of a license, and therefore did not acquire a prescriptive right.

The chancellor granted an injunction commanding defendants to remove the obstruction from the private road, and enjoining them from interfering with complainants' use of the road in the future. He based his decree, now appealed from, on the ground that complainants are entitled to a way of necessity. It is universally accepted that where a person conveys to another a parcel of land surrounded by other land, and there is no access to the land thus conveyed except over the grantor's land, the grantor gives to the grantee by implication a right of way over his own land to the land conveyed by him. The doctrine is based upon public policy, which is favorable to full utilization of land and the presumption that parties do not intend to render land unfit for occupancy. It is recognized, however, that grants of easements by implication are looked upon with jealousy and are construed with strictness by the courts. *Nichols v. Luce,* 24 Pick., Mass., 102, 35 Am. Dec. 302, 304. A way of necessity ceases to exist when the necessity for it ceases. *Waubun Beach Ass'n v. Wilson,* 274 Mich. 598, 265 N. W. 474, 103 A. L. R. 983. Judge Alvey said in *Oliver v. Hook,* 47 Md. 301, 309: "But this way of necessity, is a way of new creation by operation of law, and is only provisional; for it is only brought into existence from the necessities of the estate granted, and continues to exist only so long as there may be a necessity for its use. If, therefore, the grantee acquires a new way

to the estate previously reached by the way of necessity, the way of necessity is thereby extinguished."

It was suggested that complainants could acquire access to the county road by a rear route. Complainants protested that it might cost as much as $500 to build a bridge over the creek in the rear of their property. Of course, if the cost of constructing a road over one's land as a means of access to the public highway would require unreasonable expense out of proportion to the value of the land, then there exists such necessity for a way over the grantor's land as to justify recognition of a way by implication. *Fox v. Paul,* 158 Md. 379, 386, 148 A. 809, 68 A. L. R. 520; *Greenwalt v. McCardell,* 178 Md. 132, 12 A. 2d 522. But the court will not recognize a way of necessity if another road to the public highway can be made without unreasonable expense, even though the other road may be much less convenient. Mere inconvenience will not be sufficient to justify the finding of a way of necessity. It is only in case of strictest necessity, where it would not be reasonable to suppose that the parties intended the contrary, that the principle of implied easement can be invoked. *Burns v. Gallagher,* 62 Md. 462, 472; *Zimmerman v. Cockey,* 118 Md. 491, 496, 84 A. 743. In a California case, for illustration, where it was shown that the party claiming a right of way by implication could obtain access to the public highway by another road, although that road was obstructed by a slough and ditch, to mend which would cost about a thousand dollars, the court held that no way of necessity existed. *Carey v. Rae,* 58 Cal. 159; *Washburn, Easements and Servitudes,* 4th Ed., 259.

It was also suggested that complainants acquired in 1943 another parcel of land adjacent to and south of the parcel purchased in 1941, and that they could reach the county road by way of a 10-foot road along this adjacent land. Indeed, it is claimed that it was for the reason they knew they were using the 15-foot road merely by sufferance that they acquired the additional parcel so that they could use the 10-foot road. The chancellor, how-

ever, asserted that the 10-foot road is owned by others, and complainants have no right to use it. Defendants denied the chancellor's assertion, and offered to produce evidence to prove that the road is open to the public. The chancellor refused to receive further evidence, stating that it would not change his decision. We are of the opinion that the chancellor should have considered the additional evidence. While the Hittles were given a license to use the designated road only as long as they remained owners of the parcel conveyed, the license did not imply that future owners might be barred from access to the county road. When the licensees were no longer owners of the property, succeeding owners were still entitled to a way of necessity, although the way might not necessarily be the same as that used by the licensees.

We therefore, reverse the chancellor's decree, and remand the case to give the parties an opportunity to present additional evidence for the purpose of determining whether or not complainants now have access to the county road.

*Decree reversed, and case remanded, with costs.*

HENDERSON, J., filed the following dissenting opinion:

The conclusion reached by the Court in this case is that the case be remanded for the taking of additional testimony to determine whether the appellees have another outlet from their property to a public highway. I think the case should be reversed without a remand, on the ground that the deed in this case negatives any implication of a way of necessity, even if the necessity be shown.

The general rule was clearly stated by this Court, speaking through Judge Delaplaine, in the recent case of *Greenwalt v. McCardell*, 178 Md. 132, 139, 12 A. 2d 522, 525: "Necessity of itself does not create a right of way; it is merely a fact offered in evidence to show an inten-

tion to establish a right of way by raising a presumption of a grant. Whether or not an easement is intended depends upon the provisions of the deed and the facts in each particular case. *Doten v. Bartlett,* 107 Me. 351, 78 A. 456, 458; 17 *Am. Jur., Easements,* Sec. 48."

In *Fox v. Paul,* 158 Md. 379, 148 A. 809, 812, this Court said: "This right (to a way of necessity) does not arise from an express grant, but from a presumption that it was the intention of the parties that the grantee should have access to his lands over the lands of the grantor."

In *Duvall v. Ridout,* 124 Md. 193, 198, 92 A. 209, 211, there was testimony as to a verbal agreement that the grantee would be permitted to use the way in question. This the grantee denied. The Court said: "As the appellant (grantee) is insisting upon an absolute right to the continued and perpetual use of the roadway as an incident of the grant and as appurtenant to his property, he is, of course, not claiming and could not be given, the benefit of the alleged agreement, which he disputes and disavows, that he should have a permissive user of the way during his individual possession of the land [conveyed]."

In the early case of *McTavish v. Carroll,* 7 Md. 352, 361, 61 Am. Dec. 353, this Court distinguished the case of *Spencer v. Spencer,* 2 Ired. Law 96, 24 N. C., 96. In that case a deed from Spencer to Jones contained the words "a privilege of two leading ditches to Tucker Spencer excepted." A deed of the reserved property from Spencer to Tucker was silent as to the right retained. Ch. J. Ruffin said: "The grant was, therefore, personal to Tucker Spencer, and the right to the easement expired, at all events, with his life, and did not come to his son and heir, the defendant." This Court said: "It is evident the decision in that case rested, exclusively, upon the proper construction of the particular exception referred to. And such an exception being in the deed, the court may have considered it as precluding any further or more extensive right, by implied reservation or exception, because *expressio unius est exclusio alterius.*"

In the case of *Doten v. Bartlett*, supra [107 Me. 351, 78 A. 458], cited with approval in *Greenwalt v. McCardell*, supra, the Maine Court said: "The presumption, however, is one of fact and whether or not the grant is to be implied in a given case depends upon the terms of the deed and the facts in that case. To illustrate * * * we can conceive of a case where the owner of the front lot would be willing to convey the rear lot provided there would be no right of way over the front lot, and the grantee would be willing to take his chances of procuring an outlet over some other adjoining land. Under such circumstances the deed might convey the rear lot and distinctly recite that there was granted no right of way of necessity or otherwise over the front lot. There can be no doubt that in such a deed there would be no implied grant, and the grantee would acquire simply what he had purchased—the lot without the way." The court found from the language of the deed that no easement was reserved.

In *Orpin v. Morrison*, 230 Mass. 529, 120 N. E. 183, 185, the court cited and relied upon *Nicholas v. Luce*, 24 Pick., Mass., 102, 35 Am. Dec. 302, a case cited by this Court in the case at bar. Ch. J. Rugg said: "It is not the necessity which creates the right of way, but the fair construction of the act of the parties. Necessity is only a circumstance resorted to for the purpose of showing the intent of the parties. * * * It is a strong thing to raise a presumption of a grant in addition to the premises described in the absence of anything to that effect in the express words of the deed. Such a presumption ought to be and is construed with strictness. There is no reason in law or ethics why parties may not convey land without direct means of access, if they desire to do so." The Court found that a verbal agreement between the parties as to permissive use negatived any implication of the reservation of an easement.

In an article by Simonton entitled "Ways of Necessity" in 33 W. Va. L. Q. 64, the author inquiries: "Is the so-called presumption of intent conclusive, or may it be

overcome by showing the real intent of the parties? To put it in terms of public policy, are the interests in favor of allowing the easement strong enough to overcome the contrary expressed intent of the parties? Some presumptions in our law are so strong that they have become conclusive, as, for example, the presumption of a lost grant from adverse user for the requisite period. But it seems the presumption as to an easement by necessity may be overcome by showing the actual contrary intent of the parties. Seemingly the law allows a landowner to cut off all his rights of access to his land if he so desires." See also note 19 Ore. L. R. 362.

The presumption is raised on account of the public policy against the possible loss of utility in the case of landlocked property; but generally the obtention of a right of way is merely a matter of dollars and cents, and where the parties bargain at arms' length, the Court will not deprive the grantor of the benefit of his bargain. There is a contravening public policy in favor of freedom of contract between private parties. Thus, the presumption being merely one of fact, it is rebuttable in each case.

The Maryland authorities, in accord with the authorities elsewhere, seem to hold that any language in a deed that fairly indicates an intention not to create an easement by necessity will prevent its creation. I think there is only one inference than can be drawn from the limited license incorporated in the deed in the case at bar; permission to use a specified way for a limited time negatives any implication of an intention to create an easement. An assignee of the grantee takes with notice of this provision in the deed, and it is difficult to see how he can obtain greater rights in the property than those possessed by his predecessor in title.

For these reasons, I think there can be no implication of a grant in the case at bar, even if necessity be shown, and that the decree of the chancellor should be reversed and the bill dismissed.

GRASON, J., concurs.